# Richmond

## Noah Deal v. C. E. Nix & Son, Inc.

April 26, 1965.

Record Nos. 5899, 5900, 5901, 5902, 5903.

Present, All the Justices.

*J. Stanley Livesay, Jr.* (*Oast & Livesay*, on brief), for the plaintiff in error.

*Willard J. Moody* and *Richard S. Young* (*Moody, Mattox, Young & West*, on brief), for the defendant in error.

CARRICO, J., delivered the opinion of the court.

This litigation was commenced when C. E. Nix & Son, Inc., the plaintiff, filed six warrants in debt in the Municipal Court of the City of Portsmouth against Noah Deal, the defendant. In each warrant, the plaintiff sought to recover the balance alleged to be due for fuel oil delivered to the specific address, stated in the warrant, of each of six properties owned by the defendant.

Five of the warrants were removed by the defendant to the Court of Hustings and their disposition resulted in the five appeals now before us. The sixth warrant was for an amount less than the removable limit and judgment was taken thereon in the Municipal Court, by default, for $121.07 and in due course became final.

After judgment was taken in the Municipal Court on the $121.07 claim, the defendant filed in each of the five cases then pending in the Hustings Court a plea of res adjudicata. Each plea set forth the judgment in the Municipal Court, alleged that the amount there recovered was but a part of the plaintiff's claim, contended that the plaintiff had divided or split its cause of action and asserted that the judgment on part of the claim precluded further recovery by the plaintiff. The defendant also filed grounds of defense in each case, denying liability for each of the plaintiff's claims.

The five cases were set for trial in the Hustings Court on the same day but, before the trial commenced, the defendant demanded a separate trial in each case. When this demand was acceded to by the trial court, the defendant then moved that the plaintiff be required to elect which case should go to trial first. The plaintiff elected to try first the case represented by Record No. 5903.

The case in Record No. 5903 was heard before a jury. At the conclusion of all of the evidence, the court struck the defendant's evidence, subject to a ruling on the plea of res adjudicata, and the jury returned a verdict for the plaintiff in the sum of $448.42, the amount sued for.

The court subsequently overruled the plea of res adjudicata and entered final judgment on the jury's verdict in favor of the plaintiff. A writ of error was awarded the defendant from that judgment and the case is here on a separate record.

After the above action was taken by the trial court in the case represented by Record No. 5903, the defendant filed an additional plea of res adjudicata in each of the four remaining cases, represented by Record Nos. 5899, 5900, 5901 and 5902. Each of the pleas set forth the judgment rendered in the case in Record No. 5903, alleged that the amount there recovered was but a part of the plaintiff's claim, contended that the plaintiff had divided or split its cause of action and asserted that the judgment precluded further recovery by the plaintiff.

The four remaining cases were then consolidated for trial, upon the court's own motion, and were heard before a jury. The jury was instructed to return a special verdict, determining (1) whether there was a single account between the parties, or six separate accounts, (2) if there was but one account, whether the defendant had consented to the splitting thereof, and (3) whether the defendant was indebted to the plaintiff and, if so, in what amount.

The jury returned a verdict finding that there were six separate accounts between the parties and awarding the plaintiff the sum of $3796.08, the total of the claims involved in the four cases then on trial. The trial court overruled the pleas of res adjudicata and entered final judgment on the jury's verdict. Writs of error were awarded the defendant in the four cases thus disposed of and they are here on a consolidated record.

The defendant raises two questions which are common to all five cases. They are:

(1) Should the defendant's pleas of res adjudicata have been sustained?

(2) Did the plaintiff comply with the requirements of Code, § 8-510 and file "an account stating distinctly the several items of [its] claim"?

[1] In responding to the question relating to the defendant's pleas of res adjudicata, we recognize the rule that a single cause of action may not be split up and prosecuted piecemeal in successive actions. Recovery for part of a single cause of action bars a subsequent action for another part thereof. 1 Am. Jur. 2d, Actions, § 127, p. 647.

A running account generally constitutes but one cause of action and cannot be divided into separate claims so as to provide a basis for several actions. 1 Am. Jur. 2d, Actions, § 142, p. 656.

The purpose of these rules is to prevent harassment of the debtor. They are for his benefit and protection and he may waive them or request or agree to a different arrangement. *Gary Steel Corp.* v. *Kitchin,* 197 Va. 471, 474, 90 S. E. 2d 120; 1 Am. Jur. 2d, Actions, § 132, p. 651.

Whether there is one cause of action, or several, or whether the parties by their conduct and the dealings between them have established a specific legal status with respect thereto, depends upon the particular facts in each case. For this reason, we must turn to the evidence before us as it relates to this question and, since the plaintiff is the successful litigant, view such evidence in a light most favorable to it.

It was shown that the defendant owned property at six different locations in the city of Portsmouth. One of these was his home, one was a restaurant and the other four were rental properties.

The plaintiff had delivered fuel oil to the defendant for approximately ten years, pursuant to an agreement between the parties, under a system of "automatic fill." The plaintiff maintained separate records on each property, showing the amounts of oil delivered and consumed at each address. From these records and the computation of average daily temperatures, known as the "degree day system", the plaintiff could determine when a delivery was needed at a particular property. A truck would then be dispatched to the location and the tank filled, without an express order from the defendant.

The amount of oil delivered and the charge therefor were shown upon an invoice prepared in triplicate, bearing the address of delivery. One copy of the invoice was then mailed to the defendant within 24 to 48 hours after delivery, one copy was retained in the plaintiff's

office and the remaining copy forwarded to the plaintiff's accountant.

The accountant posted each invoice as well as any payments received in a ledger known as an "accounts receivable control record." At the end of each month, a statement was sent by the accountant to the defendant, showing each separate charge with the invoice number relative thereto, all payments received during the month and "the total amount owing for all the properties." The plaintiff's president described the statement as showing "the complete balance that he owes at any given time on the six separate accounts."

The plaintiff's president, in further describing the system of record keeping relative to its transactions with the defendant, said "we kept separate records for each account, each house that we delivered to . . . it was six accounts." The plaintiff's accountant said "each of [the defendant's] properties is kept on a separate card and tabulated separately . . . the accounts of [the plaintiff] as they are kept, are separate accounts." The accountant was asked if the ledger sheet maintained by him did not constitute but one account. He replied "No, sir, because this is part of a bookkeeping system. This is the cash part of the system." He also said "it is only for convenience that this is put on one card."

It was shown that the defendant, for income tax purposes, treated the cost of fuel oil delivered at a particular property as a separate expense of that property.

In October of 1961, when the amounts sued for in the six warrants had fallen into arrears, the defendant requested the plaintiff to furnish him with a separate account for each of the properties, showing the amount of oil delivered and the charges therefor over a period of several years. According to the plaintiff's president, "there was no idea that there would be litigation at that time." The defendant's only complaint appeared to be that he had been improperly charged for oil delivered to a rental property at 219 Hatton Street during a period when he claimed that the property was not occupied.

The plaintiff prepared and furnished the separate accounting requested by the defendant "broken down with reference to six separate accounts at six different places." The payments made by the defendant in lump sums were apportioned by the plaintiff among the several accounts, without objection from the defendant.

The plaintiff's president said he furnished a separate accounting because "it was [the defendant] that wanted these houses kept separate. It was his request for them separate." The defendant, speaking of the separate accounting, said, "Yes, I asked him for it." The

defendant refused to pay the amounts set forth in the accounts and the present litigation ensued.

In view of the evidence just recited, the defendant's pleas of res adjudicata were properly overruled. The evidence justified a finding that there were six separate accounts existing between the parties. The evidence warranted the conclusion that the parties, in their record keeping and their dealings one with the other, considered their relationship so to be.

Under the system maintained by the plaintiff, it was necessary that separate records be maintained for each property of the defendant to be supplied with oil. Only in that manner could the plaintiff carry out its agreement with the defendant to keep each property properly serviced and the charges therefore correctly segregated.

From the defendant's standpoint, such a system of separate accounting was the only method by which he could properly allocate the charges to his business and rental properties, as distinguished from his private home.

But if such was not the relationship between the parties prior to October of 1961, it surely then became their status when the defendant requested a separate accounting for each property. When such separate accounting was provided him, and his only grievance was that he could not have received the amount of oil charged to one address, he was hardly in a position to complain when he was sued on the very basis that his request had created.

Moreover, the defendant, by his actions with respect to the present litigation, has waived any right which he may have had to contend that there was a splitting of a single cause of action. It will be recalled that the five cases were originally set for trial at the same time in the trial court. Before that trial commenced, the defendant demanded and received a separate trial as to the case represented by Record No. 5903. By his demand, the defendant recognized that the claim there asserted was distinct and separate from the other claims. The defendant should not now be heard to complain of harassment from successive trials, when such a situation was brought about at his own insistence.

Finally, in this connection, the defendant says that the trial court should have disposed of his pleas of res adjudicata before trial. The ready answer to this assertion is the fact that much of the long record before us is devoted to testimony relating to whether there was one account, or six accounts, between the parties. The pleas could not have been disposed of upon the pleadings as the defendant now

claims. It was within the discretion of the trial court to determine whether it would hear separately the evidence relating to the pleas or whether it would take such evidence along with that pertaining to the merits of the claims. There has been no abuse shown of the discretion exercised in the adoption of the latter course.

■ The defendant's next contention is that the plaintiff was not entitled to recover because it did not file "an account stating distinctly the several items" of its claim, as required by Code, § 8-510.

It is true that no such account was filed with any of the warrants in debt issued on behalf of the plaintiff. But no formal objection appears to have been made with respect to this deficiency until after both sides had rested in the trial of the cases represented by Record Nos. 5899, 5900, 5901 and 5902. An objection at that time came too late to be worthy of notice.

Moreover, at a pre-trial conference, the plaintiff furnished an account to the defendant, concerning which the latter's counsel said "they did give me a copy of that account and I copied it." At another pre-trial conference, the plaintiff's counsel stated "Your Honor, we have here the records of individual accounts . . . and will offer them. These are the individual records of the individual accounts on which suit was brought." The court, in a memorandum opinion, recorded this incident and noted that "plaintiff's counsel did furnish the defendant's counsel with a thermostatic copy of the account." Thus, there was a substantial compliance with Code, § 8-510 by the plaintiff and we need take no further notice of the defendant's contentions in this regard.

■ In the cases represented by Record Nos. 5899, 5900, 5901 and 5902, the defendant raises additional questions, to which at least passing reference must be made.

The defendant first says that the jury was not selected properly.

Here, the defendant alleges that the court erred in not disqualifying James E. Vick as a prospective juror because he was "dealing with" the plaintiff at the time of trial. Upon questioning by the court, Mr. Vick stated that his business relations with the plaintiff would not "in anywise influence" him in the decision of the case. Vick was stricken from the jury list by one of the parties.

The plaintiff also says that the court erred in refusing to ask the prospective jurors whether any of them were "related by blood or marriage to the persons who are drivers" for the plaintiff "who have been summonsed to be witnesses."

The court's action with respect to both of these matters involved

the exercise of judicial discretion. The record shows that the court chose the jury in a careful manner, according to customary practices, and we find no reason to say that it abused the discretion vested in it.

Next, the defendant contends that the court erred in admitting evidence relating to his income tax procedures.

The only real question involved in the trial in the court below was whether there was one account, or six accounts, between the parties. The fact that the defendant, for income tax purposes, treated the transactions with the plaintiff as separate accounts was relevant and material to the issue to be decided, and it was not error to admit the evidence relating thereto.

The defendant says that the court erred in permitting testimony concerning electric, gas, water and telephone service to 219 Hatton Street, one of the rental properties involved in the dispute.

The defendant claimed that he was improperly charged for deliveries of oil to 219 Hatton Street because certain of the deliveries were made during a period, including winter months, when he asserted that the heating system was inoperative and the premises were vacant. The plaintiff proved that during this period electric, gas, water and telephone services were furnished to and used at the premises. Such evidence was relevant and material on the issue of whether the premises were, in fact, vacant at the time alleged and as a test of the credibility of the defendant's statement that they were vacant.

The defendant next contends that the trial court improperly permitted a representative of the plaintiff "to testify regarding records which were not identified, explained or proven, and in receiving such records for identification as Plaintiff's Exhibits 1, 2, 3, and 4."

The records referred to were the separate accounts covering the properties at the four addresses in dispute. At the trial, these accounts were identified by the plaintiff's accountant, by whom they were prepared, and they were fully explained by him. The plaintiff's president testified that he furnished the defendant a copy of the accounts, at the latter's request. The trial court, in commenting upon the exhibits, said that the plaintiff's president "testified all that oil was delivered and they were the records showing it was delivered at those addresses from his records. There's nothing in the evidence to contradict it at all." Under these circumstances, there was no error in permitting testimony regarding the records or in marking them for identification.

The defendant contends next that the court erred in refusing to strike the plaintiff's evidence.

Here, most of the defendant's argument relates to the issue as to whether there was one account, or six accounts, between the parties. That issue has already been laid to rest.

The balance of the defendant's argument concerns the sufficiency of the plaintiff's proof that it had furnished all of the oil for which it made claim. Suffice to say that there was ample proof submitted by the plaintiff upon this issue, with little more than a smoke screen erected against such proof by the defendant. That the trial court permitted the jury to settle the question was perhaps more of an advantage to the defendant than his evidence merited.

Finally, the defendant contends that the court erred in regard to the instructions granted and refused. We have examined each of the instructions in question and find no error in the court's action with respect thereto.

The only instruction which might warrant additional comment is the one in which the jury was instructed to return a special verdict. The last paragraph of that instruction required the jury to answer the question "Is the defendant indebted to the plaintiff and if your answer is yes, the defendant is indebted for the sum of $ _____." When the jury returned the verdict, it did so by filling in the blanks in the instruction and the sum of $3796.08 was written in the blank following the dollar sign. The amount so inserted was the total of the four claims submitted to the jury for consideration in the consolidated trial.

The defendant complains of the court permitting the jury to return a verdict in the combined total of the amounts involved in the four cases. The only basis asserted for this complaint is that the defendant might be prejudiced in these appeals. He has not been so prejudiced and we hold this contention to be without merit.

The defendant has had entered against him judgments for claims for which he is clearly liable, in proceedings which are devoid of error. Accordingly, the judgments will be

*Affirmed.*