## State Highway and Transportation Commission of Virginia

### v.

## Cardinal Realty Company

Record No. 830901

November 26, 1986

Present: All the Justices

*John J. Beall, Jr., Senior Assistant Attorney General (Gerald L. Baliles, Attorney General; Walter A. McFarlane, Deputy Attorney General*, on briefs), for appellant.

*Samuel W. Hixon, III (Morris E. Mason; Williams, Mullen & Christian*, on brief), for appellee.

THOMAS, J., delivered the opinion of the Court.

This is an appeal of an award in a condemnation proceeding. The State Highway and Transportation Commissioner of Virginia contends that the trial court erred in failing to strike, for cause, four of nine prospective condemnation commissioners. The landowner, by cross appeal, contends that the trial court erred in not awarding it interest at the judgment rate from the date the trial court upheld the commissioners' award until the completion of the case on appeal. In our view, the trial court correctly decided both issues. Therefore, we will affirm its judgment.

The Highway Commissioner sought to condemn land and an easement in Chesterfield County as part of the extension of Route 76, the Powhite Parkway. On November 1, 1979, the Highway Commissioner filed a certificate describing the land and the easement, and paid into court $230,000.

On January 14, 1983, the trial court summonsed nine prospective commissioners. The Highway Commissioner participated in *voir dire*. According to the Highway Commissioner, the testimony on *voir dire* of Samuel B. Ridgeway, Archie K. McLellan, Jr., Thomas L. Daniel, and Donald B. Heslep established that these prospective commissioners were not disinterested.

Ridgeway testified that he lived in the Scottingham subdivision, an area near the taking, and that he drove across the area of the taking every day. Ridgeway also admitted that four or five years earlier he had done utility work for Cardinal Realty, the owner of the taking. Ridgeway also testified that, over the years, he had

discussed with one of the principals of Cardinal the value of the Cardinal property. In Ridgeway's words, "[w]e have discussed it during the years. I do his utility work." Ridgeway also admitted membership in a civic association that had opposed the extension of Route 76, but he explained that he was in favor of the extension.

McLellan testified that he was a builder who, six or seven years prior to the date of his testimony, had built houses in the Scottingham subdivision. He said, "I used to build quite a bit in there." He stated further that at that time he had "walked" the property because he was interested in buying lots. McLellan also stated that in the past he had used a realty company owned by one of Cardinal Realty's principals to sell houses that McLellan built.

Daniel testified that one of the expert witnesses, P. L. Travis, Jr., managed property owned by Daniel. Travis was an agent for Daniel for the purpose of leasing and sales. Daniel testified that Travis was, at the time of the condemnation proceeding, managing certain of Daniel's properties.

Heslep testified that he leased land from Travis. He said further, however, that he had not retained Travis for any other purpose.

At the end of questioning by counsel for the Highway Commissioner, the trial court asked whether any of the commissioners knew of any reason whatsoever that would prevent them from rendering a fair and impartial decision in the case and from giving the Highway Department and the landowner a fair trial. No one indicated any inability to give a fair trial.

Thereafter, the trial court rejected the Highway Commissioner's motion to strike various commissioners for cause. The trial court remarked as follows: "I don't think that the answers would indicate any reason to disqualify any of the Commissioners for cause." The court said further that, "I think they are capable business people who know what is involved in the matters involved in the thing here today. I think they will render a fair and impartial decision."

After viewing the property and considering the evidence, the commissioners valued the land taken at $326,000 and valued the damages to the residue at $117,000. The trial court overruled all exceptions to the commissioners' report. And, by order dated March 7, 1983, the trial court ordered the Highway Commis-

sioner to pay into court an additional $213,000 (this being the difference between the amount of the award confirmed by the court and the amount previously paid into court by the Highway Commissioner) at the rate of interest provided in Code § 33.1-128 from November 1, 1979, until the funds were paid into court.

The Highway Commissioner's contention that commissioners Ridgeway, McLellan, Daniel, and Heslep should have been stricken for cause is answered by our recent decision in *State Highway and Trans. Commr.* v. *Dennison*, 231 Va. 239, 343 S.E.2d 324 (1986). There, on facts closely approximating those in this case, we affirmed the trial court's decision not to strike two commissioners for cause.

In *Dennison*, both commissioners were personal friends of the landowner. One had sold the landowner certain personal insurance policies but no business policies. The other had built additions to a tobacco warehouse located on a parcel of land adjacent to the property subject to the taking. Both had testified that they had no interest, direct or indirect, in the outcome of the case, had not formed any opinion on the issues, and were not sensible of any prejudice or bias which would prevent them from making a fair and impartial award.

We commented in *Dennison* "that a person's financial interest may be so intimately related to an issue at trial that he cannot sit indifferent in the cause." *Id.* at 243, 343 S.E.2d at 327. But we gave examples of situations in which jurors were not disqualified. For example, we referred to the seating of a juror who was the plaintiff's friend and family physician and of the seating of a juror who was "dealing with" the plaintiff at the time of trial. *Id. See Chesapeake & O. R. Co.* v. *Smith*, 103 Va. 326, 49 S.E. 487 (1905), and *Deal* v. *Nix & Son, Inc.*, 206 Va. 57, 141 S.E.2d 683 (1965). We pointed out that the decision to seat the commissioners was in the sound discretion of the trial court and that the trial court's decision would not be overturned absent an abuse of discretion.

Here, we find no abuse of discretion. Neither Daniel nor Heslep was shown to have had any dealings with the landowner. The challenge asserted against them was that they had dealings with one of the expert witnesses. Yet, it is nowhere explained how their connection with a witness gave them a direct or indirect interest in the outcome of the case or made them biased or prejudiced.

McLellan is covered by the specific facts of *Dennison*. All that was established about him was that in the past he had had business dealings with the landowner. That, without more, was insufficient to require the trial court to refuse to seat McLellan as a commissioner.

Ridgeway's testimony suggests an ongoing business relationship with the landowner. But, according to the cases relied on in *Dennison*, even an ongoing relationship does not always require that the court refuse to seat a commissioner. The question is whether the ongoing relationship is such that the commissioner will have a financial interest related to an issue the commissioner is called upon to decide. There was no such evidence in this case. We hold that the trial court did not err in refusing to strike for cause the prospective commissioners who were challenged by the Highway Commissioner.

█ The post-award interest issue was also correctly decided. Cardinal Realty contends that it was entitled to post-award interest at the judgment rate, pursuant to Code § 6.1-330.10, from the date of the order overruling exceptions to the commissioner's report until the completion of the case on appeal. However, post-award interest on condemnation awards is controlled by Code § 33.1-128, which the trial court applied. That provision describes the situations in which interest is to be awarded and provides that "[i]n no other instance shall interest be allowed on any award." In *Schmidt* v. *City of Richmond*, 206 Va. 211, 217, 142 S.E.2d 573, 577 (1965), we said that in eminent domain proceedings the "statutes must be strictly construed and followed." Here, adherence to what we said in *Schmidt* requires us to affirm the trial court. *See also Highway Comm'r.* v. *Parsonage Trustees,* 220 Va. 402, 258 S.E.2d 503 (1979).

In light of all the foregoing, the judgment appealed from will be affirmed.

*Affirmed.*

RUSSELL, J., concurring.

I concur in the result. The trial judge had the opportunity to observe the prospective commissioners and to evaluate their responses to *voir dire* examination in light of the circumstances surrounding the trial. The challenges for cause fell within the trial court's sound discretion, and there is no evidence that its discre-

tion was abused. Nevertheless, I am concerned that this Court's opinion, if read too broadly, might be interpreted as approving the seating of commissioners who have an ongoing business relationship with either the condemnor or the condemnee. As a general proposition, I believe that would be a mistake.

In this case, the evidence that Commissioner Ridgeway had an ongoing business relationship with the condemnee was ambiguous. Mr. Ridgeway testified on *voir dire* that he was familiar with the property and had discussed its value with one of the owners. He said that he had done utility work for the owner four or five years earlier. At a later point in his *voir dire* examination, he stated, "[w]e have discussed it during the years. I do his utility work." The condemnor relies on Ridgeway's use of the present tense in the last sentence quoted as evidence that he had an ongoing business relationship with the condemnee at the time of trial, despite his earlier testimony that the relationship was in the past. The ambiguity might have been removed by further *voir dire* questions, but it was not. This case, therefore, falls short of approving the seating of a commissioner who was shown to have an ongoing business relationship with a party at the time of trial.

I think it essential to public confidence in the commissioner system that a firm line be drawn at that point. Commissioners in eminent domain cases are vested with a heavy responsibility. They are neither chosen at random from the jury list nor selected by a democratic process. Rather, they are appointed by the court from lists submitted by the parties. Code § 25-46.20. They are to be "freeholders, upright and capable, . . . without bias or prejudice . . . ." *Chairman Highway* v. *Fletcher*, 153 Va. 43, 46-47, 149 S.E. 456, 457 (1929).

Consequently, we have held that "it is of paramount importance that the commissioners avoid even the appearance of impropriety in order to assure public confidence in condemnation proceedings." *State Highway Comm'r* v. *Garland*, 223 Va. 701, 705, 292 S.E.2d 355, 358 (1982). The maintenance of that public confidence necessitates the absence of any suspicion that the commissioners might be improperly influenced, or affected by a relationship to the parties, or by any other extraneous matters. *May* v. *Crockett*, 202 Va. 438, 440-441, 117 S.E.2d 648, 649-50 (1961).

It is extremely unlikely that the public would have confidence in the judgment of a commissioner whose livelihood depended, to any degree, upon an existing business relationship with a party to the

case on trial, even though the commissioner may in fact be a person of the utmost integrity, determined to perform his duty in an upright and unbiased manner. For that reason, I would draw the line at an ongoing business relationship, even though the trial court might conclude that the prospective commissioner was in fact unbiased.