## CIRCUIT COURT OF THE CITY OF RICHMOND

Epoxy Systems, Inc.

v.

Kjellstrom and Lee, Inc.

November 3, 1992

Case No. HC-834–3

BY JUDGE T. J. MARKOW

This case comes before the court on request for an injunction to prevent defendant Kjellstrom and Lee, Inc. (K & L) from pursuing an arbitration claim against Epoxy Systems, Inc. (ESI). The facts of the case are as follows.

In 1988, the Wella corporation hired K & L to design and build a plant and office building. K & L hired ESI to perform floor coating and sealing work, evidenced by a contract dated March 29, 1989. ESI was to apply an epoxy coating called Permaflex in the compounding room and a sealer called Aquaplus 100 (an agreed substitute for urethane) in the filling room and some other areas. ESI performed under the contract; however, in 1989, 1990 and 1991, Wella experienced problems with both flooring substances. ESI was notified and consulted about these problems. Following unsuccessful attempts to negotiate a settlement, ESI advised K & L that it would perform no further repair or replacement of either type of flooring.

Paragraph 25 of the parties' contract provided that disputes would be submitted to arbitration. K & L submitted an arbitration demand dated December 2, 1991. The demand itself described the nature of the dispute: "Material furnished and installed by Epoxy Systems, Inc., failed and Epoxy Systems refuses to make repairs or replace." The relief sought was "[r]emoval of failed material and replacement with approved material by Epoxy Systems, Inc., in a timely fashion plus 50% of AAA fees." Accompanying the demand was a cover letter which stated that the demand concerned "the Aqua-plus 100

flooring material furnished and installed by you on the referenced project." (Plaintiff's Exhibit C-1) John S. Barr, the arbitrator, decided at a preliminary hearing that "Kjellstrom and Lee, Inc., shall not be required to stipulate that it will not, in the future, assert a claim against Epoxy Systems, Inc., in connection with the Permaflex materials or application." (Exhibit 1 to Joint Exhibit 1) The only evidence taken at the hearing related to the Aquaplus flooring. The arbitrator's award required ESI to pay K & L $20,347.74, which ESI paid in full.

On July 9, 1992, K & L sent a second cover letter and arbitration demand to ESI, specifically regarding the Permaflex 502 Epoxy flooring. ESI claimed that the second arbitration was barred by res judicata, a point on which the AAA, as a nonjudicial body, declined to rule, but rather agreed to abide by a court determination in that regard. ESI presents that issue to this court.

The Supreme Court of Virginia has not spoken on the issue whether res judicata applies to arbitration awards as well as to judicial proceedings. However, other courts have answered that question in the affirmative. *See, e.g., Sanders v. Washington Metro. Area Transit Auth.*, 819 F.2d 1151, 1157 (D.C. Cir. 1987), and cases cited therein (to promote the goals of arbitration, res judicata applies to claims that were, or should have been, submitted to arbitration); *Corey v. Avco-Lycoming Division, Avco Corp.*, 307 A.2d 155, 160–161 (Conn. 1972), *cert. denied*, 409 U.S. 1116 (1973), and cases cited therein (an arbitration award has the same force as a judgment for res judicata purposes, for all matters embraced in the submission); *Thibodeau v. Crum*, 6 Cal. Rptr. 2d 27, 30 (Cal. Ct. App. 1992) (res judicata applies to arbitration, and the parties have a duty "to place before their arbitrator all matters within the scope of the arbitration, related to the subject matter, and relevant to the issues."). The Restatement also adopts this view. Restatement (Second) of Judgments, § 84 (1982).

This court finds that the rule espoused in the above cases and Restatement does further the goals of arbitration, which include simplicity, efficiency, and cost effectiveness. Allowing successive arbitration of the same claims, or claims which should have been brought together, would prolong and burden the system by permitting a duplicative process which arbitration was designed to eliminate.

The next question thus becomes whether the disputes over the Aquaplus and Permaflex floor coatings were in fact "the same

claim" for res judicata purposes. Virginia cases have articulated, in a number of different ways, the test to be applied. *Diamond State Iron Co. v. Rarig & Co.*, 93 Va. 595 (1896), which addressed the complaints of the creditors of a corporation, stated the rule as follows:

> [t]he court requires the parties to the litigation to bring forward their whole case, and will not (except under special circumstances) permit the same parties to open the same subject of litigation, in respect of matter which might have been brought forward as a part of the subject in contest, but which was not brought forward, only because they have, from negligence, inadvertence, or even accident, omitted part of their case. The plea of res adjudicata applies, except in special cases, not only to points upon which the court was actually required, by the parties, to form an opinion and pronounce a judgment, but to every point which properly belonged to the subject of litigation, and which the parties, exercising reasonable diligence, might have brought forward at the time.

*Id.* at 603.

Following that reasoning, it must be determined whether the disputes over both types of flooring were properly the subject of the same arbitration, and if so, whether with reasonable diligence K & L might have brought the claims together. *Allstar Towing, Inc. v. City of Alexandria*, 231 Va. 421 (1986), provides some guidance for this inquiry. Allstar Towing, before it was actually incorporated, submitted a bid for a city towing contract. The city declared Allstar ineligible, and Allstar appealed this ruling. A court determined that the city had acted reasonably. The city again invited bids for the contract, and Allstar, by this time incorporated, submitted one. The city awarded the contract to Franconia Towing & Storage, and Allstar protested, alleging that Franconia did not qualify according to the terms of the bid. Allstar filed an action against the city, and the court held that this second suit was barred by res judicata. In reversing and remanding, the Supreme Court of Virginia held that:

> [m]anifestly, the same cause of action was not involved in the two cases. For the purposes of res judicata, a "cause of action" may be defined broadly "as an assertion of particular legal rights which have arisen out of a definable factual transaction." *Bates v. Devers*, 214 Va. 667, 672 n. 8, 202

S.E.2d 917, 921 n. 8 (1974). . . . the facts giving rise to the second cause of action were not even in existence when the first action was heard and decided on the merits . . . . In sum, the legal rights asserted in the second action arose from a factual transaction that was different from the factual transaction giving rise to the assertion of legal rights in the first action.

*Allstar*, 231 Va. at 425. K & L argues that here, as in *Allstar*, the "second dispute did not become ripe until after the court had considered the first dispute." (Defendant's Brief at 8) However, the two circumstances are distinguishable. In *Allstar*, the facts themselves, from which a dispute arose, did not exist until after the first suit. Allstar was complaining about a bid award, and it obviously had no complaint until the award was made. The bid was not awarded to the allegedly unqualified company until after the original suit. The instant situation is much different. At the time the first arbitration demand was brought, the facts giving rise to the second demand, the failure of the Permaflex flooring, were already in existence. The floors treated with both products had been problematic since 1989 (Defendant's Answer at 2, para. 8). The fact that K & L did not positively link the problem with ESI until after the first arbitration is not what *Allstar* addressed. K & L's claim against ESI is that ESI breached its contract to correctly prepare the floors and apply the flooring products. Any breach by ESI necessarily occurred at the time of its performance. The Froehling & Robertson report of April 21, 1991 (Plaintiff's Exhibit H) traced the problem to acid etching preparation, as opposed to owner abuse as was originally thought. K & L alleges that it had no controversy with ESI until the issuance of that report. However, the report did not create any new rights for K & L. It did not give rise to a cause of action against ESI; ESI's performance did.

Another test articulated in *Brown v. Haley*, 233 Va. 210 (1987), leads to the same conclusion. "The test to determine whether claims are part of a single cause of action is whether the same evidence is necessary to prove each claim" *Id.* at 216. *Brown* involved both an action for ejectment and an easement. The court differentiated between the types of evidence needed to prove the claims, noting that the "easement which the Haleys assert in this case cannot be proved by the facts which proved in the ejectment action that the Browns were owners of the disputed property." *Id.* at 217. In the instant case,

on the other hand, incorrect preparation of the floors and/or application of the products by ESI could have been proven by the same body of facts. That K & L chose to have separate studies done on the different rooms does not alter the fact that the same evidence as to the acid etching process would have supported both claims.

The work performed by ESI was pursuant to a single contract in which K & L subcontracted the special flooring portion of its main contract. The portion of the parties' agreement entitled "The Work" provides that "[t]he subcontractor shall provide the necessary labor, equipment, and materials to furnish and install all of the urethane and chemical resistant epoxy flooring items . . . ." (Plaintiff's Exhibit A) It further provided that "this Agreement is based on the use of the following products," after which the two types of flooring materials were described. (Plaintiff's Exhibit A) The words of the document itself refer to a single agreement, for labor, etc., under which two different products were to be used. It is true that a single agreement to undertake discrete transactions could give rise to multiple causes of action. For example, in *Deal v. Nix & Son, Inc.*, 206 Va. 57 (1965), the parties had a fuel delivery agreement, under which the plaintiff delivered oil to each of defendant's six properties. The court was called upon to determine whether actions for nonpayment should be considered separately for each delivery location or as a single delivery agreement. "Whether there is one cause of action, or several, or whether the parties by their conduct and the dealings between them have established a specific legal status with respect thereto, depends upon the particular facts in each case." *Id.* at 60. Factors which led the court to determine that six separate accounts existed included the plaintiff's maintenance of separate records on each property, the defendant's treatment, for income tax purposes, of the cost of the oil as a separate expense for each property, the plaintiff's apportionment of payments by the defendant among the various accounts, and the request by the defendant for a separate trial on one of the claims. *Id.* at 60–62.

The facts in the instant case reflect no such separation. The duties of the parties were delineated in a single contract; payment was for a single sum, not apportioned to different aspects of the project, for "materials furnished and work performed." (Plaintiff's Exhibit A, Article IV) While two different products were used, and the work encompassed different rooms in the facility, the work was all undertaken at the same time, as part of one project. K & L did conduct

separate investigations into the problems, based upon which product was used, and it mistakenly believed, through the course of most of the events herein, that the Permaflex problem was due to chemical attack. While this treatment of the situation by K & L may provide evidence of K & L's own interpretation of what transpired, it does not necessarily reflect the actual relationship between the parties or their dealings with one another, as described in *Deal*. K & L's unilateral choice to pursue the failures separately cannot, in fairness, bind ESI to the same interpretation. In *Deal*, the defendant argued for treatment as a single transaction, yet his own tax records and request for separate trials illustrated the contrary. Here, there is no evidence that ESI itself treated the situation as two distinct transactions. In fact, the rulings of the arbitrator, John Barr, at the preliminary hearing reflect the opposite. ESI was permitted to offer evidence in the original arbitration regarding the Permaflex materials and application which it found "relevant and material to the defense of the claim asserted herein." (Exhibit 1 to Joint Exhibit 1) In addition, ESI requested that K & L be required to stipulate that it would not assert a future claim against ESI regarding Permaflex. While this request was denied, it evidences a desire on ESI's part for a single resolution to the entire problem.

Obviously, the interpretations of the parties as to unity or separateness are at odds and therefore not determinative. But in light of all the evidence presented, this court views the situation between the parties as a single "special flooring" project. Arbitration was the method agreed upon to settle disputes regarding the whole project. Between the time of the first and second arbitration demands, ESI did not commit, nor did K & L allege, any "new" breaches; no different action had been undertaken on the project by ESI; no "new" rights accrued to K & L. The situation between the parties was exactly the same; the work had been long completed, the problems had already surfaced, and the only change was the extent of K & L's knowledge as to the source of the problem. ESI should not be responsible for the particular course of K & L's investigation and be forced to subject itself to multiple, successive litigation which res judicata is designed to avoid. These claims should have been brought together.

As a result, res judicata precludes K & L from pursuing the second arbitration, and an injunction to that effect shall issue. In addition, this court confirms the award of the original arbitration dated May 29, 1992, and finds that ESI has satisfied that award.