20 A.3d 163

**U.K. CONSTRUCTION & MANAGEMENT, LLC**

v.

**Patricia GORE.**

**No. 2824, Sept. Term 2009.**

Court of Special Appeals of Maryland.

May 26, 2011.

Lara Wilkinson, Baltimore, MD, for Appellant.

Bryan Tillman (Tillman, Sapia PA, on the brief), Towson, MD, for Appellee.

Panel: JAMES R. EYLER, WRIGHT, ARRIE W. DAVIS, (Retired, Specially Assigned), JJ.

WRIGHT, J.

Appellant, U.K. Construction & Management, LLC ("U.K. Construction"), entered into a home improvement contract ("Contract") with appellee, Patricia Gore, on August 10, 2007, for the renovation of a property owned by Gore at 2200 Brookfield Road, Baltimore, Maryland. Gore refused to pay U.K. Construction the final installment payment, alleging that several items on the punch list still needed attention. In late 2008, after court-ordered arbitration, the arbitrator found in favor of U.K. Construction.

On September 1, 2009, Gore filed a petition to compel arbitration in the Circuit Court for Baltimore City, again alleging defective work by U.K. Construction. U.K. Construction maintained that the issues had already been addressed in the prior arbitration, that the arbitration award constituted a final judgment, and that it was contrary to the principles of res judicata to re-litigate matters already covered. The court issued an order on November 25, 2009, denying Gore's petition and granting U.K. Construction's motion for sanctions. On December 4, 2009, Gore filed a motion for reconsideration. The court scheduled a motions hearing and subsequently reversed the November 25th ruling, instead granting Gore's petition to compel arbitration.

U.K. Construction noted a timely appeal to this Court, asking us to determine whether the circuit court erred in granting Gore's petition.[1] For the reasons that follow, we reverse the court's judgment.

---

1. U.K. Construction maintains that the claims at issue were litigated and finalized in a prior arbitration and asks us to consider the following questions:

## Statement of Facts

On August 10, 2007, the parties entered into a contract for the renovation of a property owned by Gore at 2200 Brookfield Road, Baltimore, Maryland. U.K. Construction is a general contractor licensed in the State of Maryland to perform home improvement work. Gore obtained a renovation loan in connection with the Contract from SunTrust Bank, after SunTrust Bank had approved U.K. Construction as the general contractor.

The Contract stipulated that U.K. Construction was to be paid a total sum of $202,800.00 in installment payments according to a draw schedule. There were five scheduled draws. The Contract provided for certain guarantees of materials and workmanship, including that provided by subcontractors, and included a warranty for one year from the date of final acceptance of the work. The job proceeded without incident and four of the five scheduled draws were submitted and paid. Gore refused to pay the final installment totaling $40,720.00, claiming that several punch list items were deficient. Before U.K. Construction was given the opportunity to take action on the items, Gore locked them out and hired other contractors. Gore then obtained a certificate of occupancy from the city of Baltimore to certify that the work had been completed, refinanced the property with another mortgage lender, and paid off SunTrust Bank. Gore never paid U.K. Construction the final installment.

Paragraph 12 of the Contract required that any and all disputes be settled via binding arbitration and stated that the

---

1) Did the Circuit Court err as a matter of law in granting the Appellee's Petition to Compel Arbitration, where the doctrine of "Res Judicata" applied, as there had been a prior case which was disposed of by a final judgment between the same parties, concerning the same matter and where the Appellee had had the opportunity fully to present her claim to the arbitrator?

2) Did the Circuit Court err as a matter of law in ruling that the Contract was still valid and enforceable, contrary to the arbitrator's finding in the prior case that the contract had been 'repudiated' by Appellee, and where Appellant subsequently exercised its right to rescind the Contract?

decision of the arbitrator would be final and binding on the parties.[2] On March 27, 2008, U.K. Construction filed a petition to compel arbitration and to appoint an arbitrator, in the circuit court. The court granted U.K. Construction's request, and on August 18, 2008, it ordered that Robert L. Ferguson, Jr. Esq. be "appointed to adjudicate the substantive issues" in this matter ("prior arbitration").

On October 22, 2008, the parties attended the arbitration hearing, which lasted approximately eight hours.[3] After hearing all the evidence and arguments from both attorneys, Ferguson ruled in favor of U.K. Construction and issued a detailed opinion, dated November 25, 2008, and a supplemental opinion dated December 12, 2008. The arbitrator considered all outstanding rights and obligations under the Contract and found in favor of U.K. Construction, as follows:

> I regard [Gore's] conduct, changing the lock, not cooperating with Plaintiff for a final inspection of the Property by the City, obtaining an occupancy permit on her own and obtaining a mortgage loan to pay off the construction loan without paying Plaintiff, as a repudiation of the contract.

The arbitrator also found that despite Gore having introduced evidence that she incurred expenses in excess of $35,000 while trying to fix U.K. Construction's work,[4] those repairs "should have been pursued as warranty work."

Following the arbitration award, Gore did not exercise her right to vacate or modify the award.[5] On December 29, 2008,

---

**2.** Paragraph 12 of the Contract provides as follows:
Disputes hereunder shall be submitted for binding arbitration. THE ARBITRATOR'S DECISION SHALL BE FINAL AND BINDING UPON THE OWNER AND CONTRACTOR. Judgment upon the award and any damages rendered may be entered in any court having jurisdiction thereof. The party found to be liable should pay the arbitration fee and all reasonable attorneys' fees, if any.

**3.** There was no stenographic record of the arbitration hearing.

**4.** Gore introduced evidence that she hired several contractors, other than U.K. Construction and their subcontractors, to repair the items on her punch list.

**5.** Md.Code (1973, 2006 Repl.Vol.) Courts and Judicial Proceedings Article ("CJP") §§ 3–222 & 3–224 state:

after Gore failed to make any payments under the award, U.K. Construction filed a petition to confirm arbitration award as a

### § 3–222. Modification or correction of award.

(a) *Application.*—A party may apply to the arbitrators to modify or correct an award within 20 days after delivery of the award to the applicant.

(b) *Notice of application.*—a written notice of an application to modify or correct the award shall be given to the opposing party, stating that he shall serve any objection to the application within ten days.

(c) *Grounds for modification.*—The arbitrators may modify or correct an award:

(1) On the grounds stated in § 3–223(b)(1), (2), or (3) of this subtitle; or

(2) For the purpose of clarity.

(d) *Modification of award and court's order.*—The arbitrators shall modify or correct an award consistent with the order of court, if a petition under § 3–223, § 3–224, or § 3–227 of this subtitle is pending.

(e) *Modified award subject to provisions of this subtitle.*—The modified or corrected award is subject to the provisions of §§ 3–223, 3–224, and 3–227 of this subtitle.

### § 3–224. Vacating award.

(a) *Petition.*—(1) Except as provided in paragraph (2), a petition to vacate the award shall be filed within 30 days after delivery of a copy of the award to the petitioner.

(2) If a petition alleges corruption, fraud, or other undue means it shall be filed within 30 days after the ground become known or should have been known to the petitioner.

(b) *Grounds.*—the court shall vacate an award if:

(1) An award was procured by corruption, fraud, or other undue means;

(2) There was evidence partiality by an arbitrator appointed as a neutral, corruption in any arbitrator, or misconduct prejudicing the rights of any party;

(3) The arbitrators exceeded their powers.

(4) The arbitrators refused to postpone the hearing upon sufficient cause being shown for the postponement, refused to hear evidence material to the controversy, or otherwise so conducted the hearing, contrary to the provisions of § 3–213 of this subtitle, as to prejudice substantially the right of a party; of

(5) There was no arbitration agreement as described in § 3–206 of this subtitle, the issue was no adversely determined in proceedings under § 3–208 of this subtitle, and the party did not participate in the arbitration hearing without raising the objections.

(c) *When award not to be vacated.*—The court shall not vacate the award or refuse to confirm the award on the ground that a court of law or equity could not or would not grant the same relief.

judgment with the circuit court.[6] On February 2, 2009, the court dismissed the petition with prejudice. Gore subsequently entered into a promissory note with U.K. Construction to pay off all monies due under the arbitration award via installment payments.

On February 13, 2009, approximately two months after receiving an unfavorable result in the prior arbitration, Gore filed a complaint against U.K. Construction with the Maryland Home Improvement Commission ("MHIC"), alleging the same defective workmanship that had been heard during the arbitration. U.K. Construction informed MHIC that the matter had already been adjudicated via arbitration. MHIC took no action.

On September 1, 2009, Gore filed a petition to compel arbitration in the circuit court, alleging that "much of the work performed by [U.K. Construction] on the property was done in an unworkmanlike manner and is in breach of the express and implied warranties of the [Contract]"[7]. On September 24, 2009, U.K. Construction filed a response in opposition to appellee's petition to compel arbitration, arguing that the issues raised in Gore's petition had already been addressed in the prior arbitration and it was therefore contrary to the

---

6. CJP § 3–227 states:

§ **3–227. Confirmation of award by court.**
 (a) *Petition.*—A party may petition the court to confirm the award.
 (b) *Action by court.*—The court shall confirm the award, unless the other party has filed an application to vacate, modify, or correct the ward within the time provided in §§ 3–222 and 3–223 of this subtitled.
 (c) *Proceedings when award not confirmed.*—If an application to vacate, modify, or correct the ward has been filed, the court shall proceed as provided in §§ 3–223 and 3–224 of this subtitle.

7. Paragraph 8 of the Contract provides as follows:
The Contractor guarantees all work performed and materials supplied . . . to be of good quality and free from fault for a period of one year from the date of final acceptance by the Owner of all work required under this contract. *The Contractor shall provide the Owner with all warranties and guaranties* for materials and equipment installed in the premises.
(Emphasis added).

principle of res judicata to re-litigate those issues. As such, U.K. Construction concluded that "Ms. Gore's Petition to Compel Arbitration is [merely] an attempt to claw back some of the money she was ordered to pay [U.K. Construction] at the earlier arbitration hearing. Ms. Gore's actions are in bad faith, a waste of this court's time and resources, as well as incurring unnecessary legal fees to [U.K. Construction]."

On September 24, 2009, U.K. Construction also filed a motion for sanctions, reiterating its position that Gore's petition was filed "in bad faith and without substantial justification."

On November 25, 2009, the court denied Gore's petition and granted U.K. Construction's motion for sanctions. On December 4, 2009, Gore filed a motion for reconsideration and requested a hearing. After hearing argument on January 19, 2010, the court vacated its November 25th order, stating:

> Well, it appears to this Court that it's unfair to the petitioner in this case to have paid on something that she's not satisfied with. It appears to this Court that the petitioner has a claim for breach of warranty whether it gets interposed or not.

Without acknowledging the prior arbitration, the court then stated that "[t]he petition to compel arbitration is granted in this case."

## Standard of Review

An order granting an application to compel arbitration is a final appealable order. *See Freedman v. Comcast Corp.*, 190 Md.App. 179, 190–91, 988 A.2d 68 (holding that an order compelling arbitration was a final appealable judgment), *cert. denied*, 415 Md. 39, 997 A.2d 790 (2010); *Rourke v. Amchem Prods., Inc.*, 153 Md.App. 91, 107, 835 A.2d 193 (2003) (stating that a circuit court's order to compel arbitration, per an arbitration clause in a written agreement, is a final appealable judgment), *aff'd*, 384 Md. 329, 863 A.2d 926 (2004). Thus, in the instant case, the circuit court's January 19, 2010 order, entered on January 27, 2010, was a final order

governed by Md.Code (1973, 2006 Repl.Vol.) Courts and Judicial Proceedings Article ("CJP") § 12–301, which states:

> . . . a party may appeal from a final judgment entered in a civil or criminal case by a circuit court. the right of appeal exists from a final judgment entered by a court in the exercise of original, special, limited, statutory jurisdiction, unless in a particular case the right of appeal is expressly denied by law.

As a general rule, a circuit court's decision as to whether a dispute is subject to arbitration is a matter of contract interpretation and is reviewed *de novo*. *Walther v. Sovereign Bank*, 386 Md. 412, 422, 872 A.2d 735 (2005) (citing *Wells v. Chevy Chase Bank F.S.B.*, 363 Md. 232, 250, 768 A.2d 620 (2001)).

## Discussion

### I. Res Judicata is applicable where the arbitration has the elements of an adjudicatory procedure.

▆▆▆ "Res judicata, or the doctrine of claim preclusion, 'bars the relitigation of a claim if there is a final judgment in a previous litigation where the parties, the subject matter and causes of action are identical or substantially identical as to issues actually litigated and as to those which could have or should have been raised in the previous litigation.'" *Monarc Constr., Inc. v. Aris Corp.*, 188 Md.App. 377, 388, 981 A.2d 822 (2009) (quoting *R & D 2001, LLC v. Rice*, 402 Md. 648, 663, 938 A.2d 839 (2008)) (emphasis omitted). To invoke the doctrine, three elements must be present:

> (a) the parties in the present litigation are the same or in privity with the parties to the earlier litigation; (2) the claim presented in the current action is identical to that determined or that which could have been raised and determined in the prior litigation; and (3) there was a final judgment on the merits in the prior litigation.

*Id.* (quoting *R & D 2001, LLC, supra*, 402 Md. at 663, 938 A.2d 839).

■ As a preliminary matter, res judicata is applicable to the instant case even though the "final judgment" at issue is an arbitral award and not a judicial decision. Although the appellate courts of this State have addressed this issue fugaciously, they have not done so squarely. Indeed, prior Maryland case law forecasts the ruling we make in this case by stating that, under certain conditions, a "final award of arbitration should be given the same res judicata effect as a judgment of a court." *Ewing v. Koppers Co.*, 312 Md. 45, 57, 537 A.2d 1173 (1988). *See also Batson v. Shiflett*, 325 Md. 684, 602 A.2d 1191 (1992) [8]. Other jurisdictions have adopted this position. *See Ernst & Young, LLP v. Tucker ex rel. Health-South Corp.*, 940 So.2d 269, 286 (2006) (stating that "the doctrine of [res judicata] applies to arbitration proceedings that follow rulings in judicial proceedings"); *Camargo v. Cal. Portland Cement Co.*, 86 Cal.App.4th 995, 103 Cal.Rptr.2d 841 (2001) (stating that "[res judicata] is appropriately applied to arbitration as a matter of policy where the arbitration had the elements of an adjudicatory procedure"); *Epoxy Sys. Inc. v. Kjellstrom & Lee, Inc.*, 29 Va. Cir. 263, 264 (Va.Cir.Ct.1992) (deciding that "res judicata applies to arbitration awards"); *James L. Saphier Agency, Inc. v. Green*, 190 F.Supp. 713, 719 (S.D.N.Y.1961) (Once a final and binding award has been made, all issues settled by that award are no longer subject to further litigation or arbitration.), *aff'd*, 293 F.2d 769 (2nd Cir.1961). *But see LaSalla v. Doctor's Assoc., Inc.*, 278 Conn. 578, 898 A.2d 803, 815 (2006) (holding that arbitrators need not give res judicata effect to a prior arbitration award unless the parties agree otherwise). *See generally* G. Richard Shell, *Res Judicata and Collateral Estoppel Effect of Commercial Arbitration*, 35 UCLA L.Rev. 623 (1988).

Specifically, the Court in *Ewing, supra*, 312 Md. at 57, 537 A.2d 1173, stated:

---

**8.** The issue in *Batson* was the preclusive effect of an administrative law ruling while the issue in *Ewing* was raised in the context of the Labor Management Relations Act, Chapter 120. Title III § 301, 61 Stat. 156, enacted June 23, 1947, and codified at 29 U.S.C. § 185.

The general rule suggested by §§ 83 and 84 of the Restatement (Second) of Judgments (1982)[ 9] is that a valid and final award of arbitration should be given the same res judicata effect as a judgment of a court if the procedure leading to the arbitration award embraced elements of adjudicatory procedure consistent with established principles of due process, and if according preclusive effect would not be incompatible with a legal policy or contractual requirement that the second tribunal be free to make an independent determination.

* * *

When arbitration affords opportunity for presentation of evidence and arguments substantially similar in form and scope to judicial proceedings, the award should have the same effect on issues necessarily determined as a judgment has.

(Quoting Restatement (Second) of Judgments, § 84, cmt. c). Whereas here, neither party contests that it was "afford[ed][an] opportunity for presentation of evidence and arguments substantially similar . . . to judicial proceedings," we conclude that, as a threshold matter, the doctrine of res judicata is applicable to the instant case.

## II. Applying Res Judicata to the instant case.

 Whether an arbitral award should be given preclusive effect under res judicata is determined by applying the following factors, otherwise known as the "Exxon test:" [10]

---

9. Restatement (Second) of Judgments, § 84 (1979) states, in pertinent part, as follows:

 **§ 84 Arbitration Award.**
 (1) Except as stated in Subsections (2), (3), and (4), a valid and final award by arbitration has the same effects under the rules of res judicata, subject to the same exceptions and qualifications, as a judgment of a court.

10. This test was initially enunciated in *Exxon Corp. v. Fischer*, 807 F.2d 842, 845–46 (1987) which addressed the issue of when a decision rendered by the Secretary of Commerce "should be given preclusive effect." In *Exxon*, the test was articulated as follows:

(1) whether the [arbitrator] was acting in a judicial capacity; (2) whether the issue presented to the district court was actually litigated before the [arbitrator]; and (3) whether its resolution was necessary to the [arbitrator's] decision.

*Batson, supra*, 325 Md. at 701, 602 A.2d 1191.

In applying general principles of res judicata, U.K. Construction argues that Gore's petition is barred by res judicata because:

[i]n this case a successful prosecution of the second action, namely the Appellee's claim for breach of contract, would impair the rights of the Appellant established in the Prior Case, because in the prior case, the Arbitrator necessarily found that the appellant had the right to rescind the contract following material breach by the appellee.

Gore responds by arguing that U.K. Construction has already "obtained a favorable award and [she] made full restitution to [U.K. Construction]" and therefore "any award in [her] favor for breach of warranty in a subsequent arbitration proceeding would not, and in fact could not, nullify the prior award as [U.K. Construction] had been fully paid."

In ascertaining whether the resolution of an issue actually litigated was "necessary for the arbitrator's decision," *i.e.*, the third factor of the "Exxon test," the Court of Appeals has explained that "a factual issue is necessary to the determination only if its resolution is required to support to judgment entered in the prior proceeding." *Batson, supra*, 325 Md. at 707–08, 602 A.2d 1191 (citation omitted). In our analysis, one of the "factual issue[s]" upon which Gore's petition hinges—whether she prevented U.K. Construction from making the repairs—was resolved at the "prior proceeding," and that resolution was "required to support the judgement entered at the prior proceeding." We therefore agree with appellant's

---

(1) whether the Secretary was acting in a judicial capacity; (2) whether the issue presented to the district court was actually litigated before the Secretary; and (3) whether its resolution was necessary to the Secretary's decision.

contention that Gore's petition is barred under res judicata. We explain.

At the arbitration hearing, Arbitrator Ferguson gave the following explanation as to why he found that it was Gore who breached the contract and not U.K. Construction:

> Mr. Okoro's expression that he did not want to discuss it any more was not in and of itself sufficient to constitute a repudiation of the contract, particularly in light of his outstanding offer to address many of the items on the punch list, and his indication that he was intending to continue working on her zoning appeal. *I regard [Gore's] conduct, changing the lock, not cooperating with Plaintiff for a final inspection of the Property by the City, obtaining an occupancy permit on her own and obtaining a mortgage loan to pay off the construction loan* without paying Plaintiff, *as a repudiation of the contract.*

(Emphasis added).

The factual finding that Gore "chang[ed] the lock[s]" and hired a different construction company to finish the work is dispositive of Gore's present petition alleging that "much of the work performed by [U.K. Construction] on the Property . . . is in breach of the express and implied warranties of the agreement." It is pellucid that a plaintiff may not assert a claim for breach of warranty against a defendant whom he has denied the opportunity to correct the defect.[11] *See* Tamara Mcnulty, Maryland Construction Law 180 (2007) ("Where a contractor performs defective work the owner is entitled to the reasonable costs to correct the defective work. The owner, however, under the terms of most construction contracts must give the contractor notice of the incomplete or defective work and opportunity to cure before it will be entitled to complete or correct the work itself."); Troy Michael Miller, Construction Checklists 92 (2008) ("The right to cure is a fundamental contractor right."). *See also Murphy v.*

---

**11.** This is at least so where, as here, the alleged defects asserted in the current litigation were the subject of dispute at the arbitration hearing below.

*24th St. Cadillac Corp.*, 121 Md.App. 454, 460, 710 A.2d 332 (1998) ("If any warranty established pursuant to those Title 2 provisions (i.e. the implied warranty of merchantability, express warranties, an implied warranty of fitness for a particular purpose) are violated, . . . the lessee [must] give notice of the defect to the lessor, factory branch, authorized dealer, or manufacturer by certified mail, return receipt requested, and to allow the lessor, factory branch, authorized dealer, or manufacturer an opportunity to fix the defect.") [12]; *Quillen v. Kelley*, 216 Md. 396, 401–02, 140 A.2d 517 (1958) ("[W]here the vendee fails to fulfill the contract without lawful excuse, he cannot recover the payment if the vendor be ready and willing to perform his part of the contract"); *Evergreen Amusement Corp. v. Milstead*, 206 Md. 610, 621–622, 112 A.2d 901 (1955). *See also Schneider v. Saul*, 224 Md. 454, 168 A.2d 375 (1961); *American Towing & Lightering Co. v. Baker–Whiteley Coal Co.*, 111 Md. 504, 523, 75 A. 341 (1909) (stating the "settled doctrine that [a plaintiff] cannot . . . recover . . . unless it shows that it has performed its part of the contract").[13] This

_____

**12.** Others have drawn upon the Maryland Commercial Code to identify the rights and obligations of construction companies in the context of real property. *See* Richard K. Allen & Stanley A. Martin, Construction Law Handbook 1219 (2d ed. 2009) ("For improvements to private dwellings and surrounding sitework, Maryland Real Property Article 10–202(b) provides that no specific words are required to create an express warranty. *These warranties are based upon similar language in the Maryland Commercial Code.*") (emphasis added).

**13.** Other jurisdictions have similarly adopted this position. *See Gulf Prod. Co. v. Hoover Oilfield Supply, Inc.*, 672 F.Supp.2d 752, 760 (2009) ("Under Louisiana law . . . [l]iability in [breach of warranty] occurs when: 1) the seller sells a thing to the plaintiff and it is either absolutely useless for its intended purpose or its use is so inconvenient or imperfect that, judged by the reasonable person standard, had the plaintiff known of the defect, he would never have purchased it; 2) the thing contained a non-apparent defect at time of sale; and 3) the seller was given an opportunity to repair the defect.") (emphasis added); *Cooley v. Big Horn Harvestore Systems, Inc.*, 813 P.2d 736, 744 n. 7 (1991) ("To establish their claim of failure of essential purpose of the remedy of suit for breach of a warranty to repair or replace any defective product or parts thereof, *the plaintiffs were required to establish that the product was defective in material or workmanship, that the defendants had an opportunity to repair or replace the defects,* that they were unable to do

is certainly so where, as here, the defendant expresses a willingness to make the repairs and, nonetheless, the plaintiff elects to make the repairs herself.

Arbitrator Ferguson, in his decision, gave the following explanation as to why Gore's "changing the locks and completing the work herself" would be relevant to Gore's breach of warranty claim:

> For the most part, the punch list provided by [Gore] described items which constitute alleged deficiencies in the work. . . . These would ordinarily be taken care of under the warranty by [U.K. Construction] having its subcontractors correct the work or making its own repairs. Plaintiff was entitled to the opportunity to fulfill its warranty obligations. . . . [Gore]'s costs to repair or replace *should have been pursued as warranty work first giving [U.K. Construction] the opportunity to make corrections found to be necessary using [its] contractors.*

(Emphasis added). By denying U.K. Construction the "opportunity to make corrections," [14] Gore relieved U.K. Construction from its obligation to do so, and fatally impaired her breach of warranty claim with respect to the defects at issue. Gore cannot now unring that bell.

In light of the foregoing, the "factual issue" underpinning Gore's present petition-whether she denied UK Construction

---

so, that their inability to effectively repair or replace substantially affected the value of the product and that the impairment of the value damaged the plaintiffs.") (emphasis added).

**14.** *See* Md.Code (1992, 2004 Repl.Vol.), Business Regulation Article § 8–605 which provides:

**§ 8–605.** *Abandonment of or failure to perform contract.*
A contractor may not:
(1) *abandon or fail to perform,* without justification, *a home improvement contract;* or
(2) deviate materially from plans or specifications without the consent of the owner.

(Emphasis added). *See also Shade v. State,* 306 Md. 372, 382–83, 509 A.2d 664 (1986) (deciding that a home owner's showing various deficiencies in the construction of his home, without more, is insufficient to establish "abandonment" on the part of the construction company).

the ability to make the repairs-was resolved at the "prior proceeding" (in U.K. Construction's favor) and such resolution was "necessary" for the arbitral decision reached in that proceeding. Accordingly, relitigating the issue is barred under the doctrine of res judicata.

Furthermore, Gore's argument—that "any award in [her] favor for breach of warranty in a subsequent arbitration proceeding ... could not nullify the prior award as [U.K. Construction] had been fully paid"—is without merit. By claiming that U.K. Construction breached the warranty provisions in the contract, Gore implicitly seeks to, as U.K. Construction puts it, "claw back some of the money she was ordered to pay U.K. Construction at the earlier arbitration hearing." Gore cannot avoid the res judicata effect "by carefully drafting a complaint to avoid explicitly asking this Court to void or nullify the prior judgment." *Hawkins v. Citicorp Credit Servs., Inc.,* 665 F.Supp.2d 518, 526 (2009). For the foregoing reasons, we reverse the circuit court's decision to grant Gore's petition and remand for proceedings not inconsistent with this opinion.

**JUDGMENT OF THE CIRCUIT COURT FOR BALTIMORE CITY IS REVERSED. COSTS TO BE PAID BY APPELLEE.**