675 A.2d 558

**Joan A. BARNES**

v.

**CHILDREN'S HOSPITAL, et al.**

**No. 729, Sept. Term, 1995.**

Court of Special Appeals of Maryland.

May 1, 1996.

544

546

548

Keith B. Bartnik, Owings Mills, for Appellant.

Carmine T. D'Alessandro (Thomas J. Michels and Peter J. Karceski, Jr., on the brief), Towson, for Appellees.

Argued before WENNER, FISCHER and HOLLANDER, JJ.

HOLLANDER, Judge.

In this workers' compensation appeal, we shall examine the "special mission" or "special errand" rule. Joan A. Barnes, appellant, was employed by appellee Children's Hospital ("the Hospital"), in a supervisory capacity. One Saturday, a day on which she did not normally work, Barnes was shopping with her family when she was called to work to perform a task usually handled by a subordinate who was not at work that day. Barnes planned to take her family home before proceeding to work. She also realized that she needed gasoline to make the trip to the Hospital. Consequently, Barnes stopped for gasoline and, while on the premises of the service station, she slipped on a puddle of oil and was injured.

Thereafter, Barnes filed a claim for workers' compensation benefits. She alleged that she was acting in the course of her employment at the time of her injury, because she had been on a "special mission" for her employer. The Hospital and its workers' compensation insurance carrier, appellee Injured Workers' Insurance Fund, contested the claim. The Workers' Compensation Commission determined that appellant had not sustained an accidental injury arising out of and in the course of her employment and therefore denied her claim.

Barnes sought review in the Circuit Court for Baltimore City. After a bench trial, the court affirmed, holding that Barnes was not on a special mission at the time of her injury. Barnes now appeals and presents the following issues for our consideration:

I. Whether the court was in error in finding that the Appellant was not on a special mission for her employer at the time the injury was sustained.

A. Whether the Appellant was engaged in an emergency and/or irregular and unusual task for her employer at the time of the injury.

B. Whether the Appellant engaged in a self contained trip that resulted in a deviation from her direct path to her employer's work place.

We hold that appellant was on a special mission for the Hospital at the time of her injury. Therefore, the accidental injury she sustained arose out of and in the course of her employment. Accordingly, we shall reverse and remand.

## FACTUAL BACKGROUND

In October 1992, Barnes was employed by the Hospital as director of computer and information systems, a supervisory position for which she received a salary. Her normal working hours were 8:00 a.m. to 4:30 p.m., Monday through Friday, although Barnes usually remained· at the office later than 4:30 p.m. Barnes was also considered "on call" at all times. To enable the Hospital to contact Barnes to assist with problems at the office, the Hospital provided her with a beeper. Although it was not unusual for the Hospital to contact her during her off-hours, Barnes usually could resolve problems over the telephone. Nevertheless, at times she would have to travel to the Hospital.

On Saturday, October 3, 1992, Barnes was on a shopping trip with her daughter and granddaughter when Diane Gill, the Hospital's comptroller, paged her on the beeper. Gill informed Barnes that she was needed at the Hospital to work on a monthly accounts receivable report, because the employee who usually performed this work was out on a fishing trip. The report was generated on the third day of each month and, as a supervisor in charge of the Hospital computer systems, Barnes was ultimately responsible for the report once it was produced.

After speaking with Gill, Barnes intended to drive her family home before proceeding to work. She noticed, however, that she did not have enough gasoline to get to the Hospital. Before being called by the hospital, she had not planned to fill her car with gasoline; her son usually did that for her each Sunday. Prior to bringing her family home, Barnes drove to a gasoline service station and, after stepping out of her car, she slipped on a puddle of oil and fell to the ground. She sustained a fracture of her right hand and

injuries to her left knee and left shoulder. She has since had three knee operations.

In spite of her injuries, Barnes travelled to the Hospital to perform the requested tasks. Because of the fall, her family accompanied her to work, although they had originally intended to go home.

Barnes was terminated by the Hospital on October 25, 1993. Approximately one month later, on November 26, 1993, she filed a claim for workers' compensation benefits. After a hearing, the Workers' Compensation Commission determined that appellant had not sustained an accidental personal injury arising out of and in the course of her employment. The circuit court also concluded that appellant's injuries were not compensable, because Barnes had not been on a special mission at the time of her injury. The judge stated:

> The case, even if the Court looks at the evidence in the light most favorable to the claimant, and I clearly found the evidence to be very, very credible, as well as the daughter being very, very credible. Again, maybe the Court is incorrect. The Court is of the opinion that because of the claimant's position with the hospital and what normally goes along with any employee who has a beeper and, quote, unquote, on call from time to time, either to correct things by phone or going to work, that the Court finds that the claimant was not on a special errand, and therefore, the Court finds this is not a compensable work-related injury, and, therefore, the Court affirms the decision of the Workers Comp Commission.

### STANDARD OF REVIEW

Appeals from the Workers' Compensation Commission to the circuit court are conducted essentially as trials *de novo*. *Chadderton v. M.A. Bongivonni, Inc.*, 101 Md.App. 472, 478, 647 A.2d 137 (1994); *General Motors Corp. v. Bark*, 79 Md.App. 68, 73–81, 555 A.2d 542 (1989). Therefore, when the circuit court hears the case without a jury, our review of the factual findings is governed by the "clearly erroneous"

standard. Maryland Rule 8–131(c). *Kelly Catering, Inc. v. Holman,* 96 Md.App. 256, 269, 624 A.2d 1300 (1993), *aff'd,* 334 Md. 480, 639 A.2d 701 (1994). By statute, "the decision of the Commission is presumed to be prima facie correct." Maryland Code, Labor and Employment Article ("L.E.") § 9–745(b)(1) (1991).

"[O]ur function is not to determine whether we might have reached a different conclusion" on the evidence. *Mercedes–Benz v. Garten,* 94 Md.App. 547, 556, 618 A.2d 233 (1993). We will view the evidence in the light most favorable to the prevailing party. *Mayor and Council of Rockville v. Walker,* 100 Md.App. 240, 256, 640 A.2d 751, *cert. granted,* 336 Md. 354, 648 A.2d 464 (1994). We also will assume the truth of the evidence presented and give the prevailing party the benefit of all favorable inferences fairly deducible therefrom. *Mercedes–Benz, supra,* 94 Md.App. at 556, 618 A.2d 233. If there is any competent, material evidence to support the trial court's factual findings, then we cannot set them aside as "clearly erroneous," even if we might have found otherwise. *Mayor and Council of Rockville, supra,* 100 Md.App. at 256, 640 A.2d 751; *Nixon v. State,* 96 Md.App. 485, 491–92, 625 A.2d 404, *cert. denied,* 332 Md. 454, 632 A.2d 151 (1993); *Fantasy Valley Resort, Inc. v. Gaylord Fuel Corp.,* 92 Md. App. 267, 275, 607 A.2d 584, *cert. denied,* 328 Md. 237, 614 A.2d 83 (1992). But, the "clearly erroneous" standard "does not apply to a trial court's determinations of legal questions or conclusions of law based on findings of fact." *Heat & Power Corp. v. Air Products & Chemicals, Inc.,* 320 Md. 584, 591, 578 A.2d 1202 (1990). *Accord Provident Bank v. DeChiaro Limited Partnership,* 98 Md.App. 596, 603, 634 A.2d 973 (1993), *cert. denied,* 334 Md. 210, 638 A.2d 752 (1994).

The Maryland Workers' Compensation Act, which entitles covered employees to compensation for accidental personal injuries that arise "out of and in the course of employment," L.E. §§ 9–101(b), 9–501(a), is a remedial statute. Its provisions are liberally construed in favor of the employee. *Lovellette v. Mayor & City Council of Baltimore,*

297 Md. 271, 282, 465 A.2d 1141 (1983); *Bethlehem–Sparrows Point Shipyard, Inc. v. Hempfield,* 206 Md. 589, 594, 112 A.2d 488 (1955); *Ewing v. Koppers Co.,* 69 Md.App. 722, 731, 519 A.2d 790 (1987). Thus, any ambiguity in the law is resolved in favor of the claimant. *Mayor & City Council of Baltimore v. Cassidy,* 338 Md. 88, 97, 656 A.2d 757 (1995); *Cline v. Mayor & City Council of Baltimore,* 13 Md.App. 337, 344, 283 A.2d 188 (1971), *aff'd,* 266 Md. 42, 291 A.2d 464 (1972). The doctrine of liberal construction does not mean, however, that coverage may be granted beyond that which is authorized by the provisions of the Act. *Tortuga, Inc. v. Wolfensberger,* 97 Md.App. 79, 83, 627 A.2d 56, *cert. denied,* 332 Md. 703, 632 A.2d 1209 (1993).

## DISCUSSION

### I.

We must resolve whether Barnes's accidental injury arose "out of and in the course of her employment." *See* L.E. § 9–101(b)(1). The term "out of" employment refers to the cause or origin of the accident. *Wiley Manufacturing Co. v. Wilson,* 280 Md. 200, 205, 373 A.2d 613 (1977); *Proctor–Silex Corp. v. DeBrick,* 253 Md. 477, 480, 252 A.2d 800 (1969). Although no exact formula for the matter exists, an injury arises out of employment if it results from the nature, conditions, obligations, or incidents of the employment. *Knoche v. Cox,* 282 Md. 447, 455, 385 A.2d 1179 (1978); *CAM Construction Co. v. Beccio,* 92 Md.App. 452, 460, 608 A.2d 1264 (1992), *aff'd per curiam,* 329 Md. 600, 620 A.2d 939 (1993). Upon consideration of all the circumstances, there must be a "causal connection" between the conditions under which the work was required to be performed and the injury. *Blake Construction Co. v. Wells,* 245 Md. 282, 289, 225 A.2d 857 (1967); *Scherr v. Miller,* 229 Md. 538, 543, 184 A.2d 916 (1962); *Consolidated Engineering Co. v. Feikin,* 188 Md. 420, 425, 52 A.2d 913 (1947); *Schemmel v. T.B. Gatch & Sons Contracting & Building Co.,* 164 Md. 671, 683, 166 A. 39 (1933).

On the other hand, the term "in the course of" employment, refers to the time, place, and circumstances under which the accident occurs. *King Waterproofing Co. v. Slovsky,* 71 Md.App. 247, 251, 524 A.2d 1245 (1987). An injury arises in the course of employment " 'when it occurs during the period of employment at a place where the employee reasonably may be in the performance of his duties and while he is fulfilling those duties or engaged in doing something incident thereto.' " *Huffman v. Koppers Co.,* 94 Md.App. 180, 185, 616 A.2d 451 (1992), *aff'd,* 330 Md. 296, 623 A.2d 1296 (1993), quoting *Watson v. Grimm,* 200 Md. 461, 466, 90 A.2d 180 (1952). *Accord Pariser Bakery v. Koontz,* 239 Md. 586, 590, 212 A.2d 324 (1965); *Department of Correction v. Harris,* 232 Md. 180, 184, 192 A.2d 479 (1963).

Ordinarily, based on the "going and coming rule," an employee is not considered to be acting in the course of employment when travelling to or from work. Therefore, injuries suffered during such travel are usually not compensable. *Alitalia Linee Aeree Italiane v. Tornillo,* 329 Md. 40, 44, 617 A.2d 572 (1993); *Wiley Manufacturing Co. v. Wilson,* 280 Md. 200, 206, 373 A.2d 613 (1977); *Saylor v. Black & Decker Manufacturing Co.,* 258 Md. 605, 607–08, 267 A.2d 81 (1970); *Harrison v. Central Construction Corp.,* 135 Md. 170, 177, 108 A. 874 (1919); *Maryland Casualty Co. v. Lorkovic,* 100 Md. App. 333, 345, 641 A.2d 924 (1994). The rule is based on the notion that the Act does not protect employees against the common perils of life, *see Sica v. Retail Credit Co.,* 245 Md. 606, 612, 227 A.2d 33 (1967), and the dangers of ordinary commuting are dangers that are common to all people. *Tavel v. Bechtel Corp.,* 242 Md. 299, 303, 219 A.2d 43 (1966); *Maryland Paper Products Co. v. Judson,* 215 Md. 577, 584, 139 A.2d 219 (1958).

The "special mission or errand" doctrine, which first appeared in Maryland in *Reisinger–Siehler Co. v. Perry,* 165 Md. 191, 167 A. 51 (1933), constitutes an exception to the "going and coming rule." It provides that an employee is acting in the course of employment when travelling on a

special mission or errand at the request of the employer and in furtherance of the employer's business, even if the journey is one that is to or from the workplace. *Huffman v. Koppers Co., supra,* 94 Md.App. at 187, 616 A.2d 451; Richard P. Gilbert & Robert L. Humphreys, Jr., MARYLAND WORKERS' COMPENSATION HANDBOOK § 6.7-2 at 113 (2nd ed.1993); Elmer H. Blair, BLAIR'S REFERENCE GUIDE TO WORKMEN'S COMPENSATION LAW § 9:17 at 9–65; 82 Am.Jur.2d *Workers' Compensation* § 301 (1992). When the making of the journey, or the special degree of urgency or inconvenience under which the journey is made, is of such a character that *the journey itself* constitutes a substantial part of the service that the employee is rendering, an employee is considered to be acting in the course of employment. 1 Arthur Larson & Lex K. Larson, THE LAW OF WORKMEN'S COMPENSATION § 16.00 (1992).

In 1973, the Court of Appeals recognized the special mission doctrine as part of Maryland law. *See Director of Finance for the City of Baltimore v. Alford,* 270 Md. 355, 364, 311 A.2d 412 (1973) ("we shall settle the matter by holding that the special mission exception has indeed been the law of Maryland since *Reisinger–Siehler* "). We, too, have articulated the special mission rule on several occasions. In *Coats & Clark's Sales Corp. v. Stewart,* 39 Md.App. 10, 13, 383 A.2d 67 (1978), we said: "A special errand or special mission is a trip undertaken by the employee at the request of an employer for the purpose of helping the employer's business." We added that, in all cases, an "essential characteristic" of a special mission "is that it would not have been undertaken except for the obligation of employment." *Id.* In *Fairchild Space Co. v. Baroffio,* 77 Md.App. 494, 501, 551 A.2d 135 (1989), we quoted Professor Larson's formulation of the rule:

The special errand rule may be stated as follows: When an employee, having identifiable time and space limits on his employment, makes an off-premises journey which would normally not be covered under the usual going and coming rule, the journey may be brought within the course of employment by the fact that the trouble and time of making

the journey, or the special inconvenience, hazard, or urgency of making it in the particular circumstances, is itself sufficiently substantial to be viewed as an integral part of the service itself.

*Id.,* quoting 1 Larson, WORKMEN'S COMPENSATION LAW § 16.11 (1985). *See also Huffman, supra,* 94 Md.App. at 187, 616 A.2d 451 (reviewing the elements of the rule from previous cases).

But in *Fairchild Space Co. v. Baroffio, supra,* 77 Md.App. at 499 n. 3, 551 A.2d 135, we declined to address the question of whether an employee is on a special mission when the employee "is compelled to work on a day on which he or she does not normally work and, on that day, sustains injuries on the way to or leaving the place of employment." *Id.* That is the issue before us in the case at bar.

In deciding whether the special mission exception applies here, we focus on when a mission is sufficiently "special" to be brought within the ambit of the rule. The resolution of this question requires the analysis of several factors.

First, the court must consider "the relative regularity or unusualness of the particular journey." 1 Larson & Larson, THE LAW OF WORKMEN'S COMPENSATION, *supra,* § 16.13 at 4–208.24. If the journey at issue is "relatively regular," in the context of the employee's normal duties, then "the case begins with a strong presumption" that the trip is not special and instead falls within the normal going and coming rule. *Id.* at 4–208.24, 4–208.26. For example, in *Mayor and City Council of Baltimore v. Jakelski,* 45 Md.App. 7, 410 A.2d 1116 (1980), in which we held that a police officer was not entitled to workers' compensation benefits when he was injured while travelling from his home to traffic court, we focused on the fact that the officer made monthly trips to testify in support of traffic citations he had issued, thus making the trip a "regularly repetitive" part of his duties. *Id.* at 9, 11, 410 A.2d 1116. *See also Richardson v. Pitts,* 408 P.2d 327 (Okla.1965) (waitress injured while travelling to work on Sunday; waitress was

supposed to have Sundays off but actually worked on many Sundays; *held,* not compensable).

 Second, the court must consider "the relative onerousness of the journey compared with the service to be performed at the end of the journey." Larson & Larson, *supra,* § 16.13 at 4–208.26. Both of the variables in this comparison work in tandem. If the service that the employee must perform at the workplace is minuscule, while the employee's trip to the workplace is long or otherwise onerous, then this factor would militate in favor of a conclusion that the mission is special. Professor Larson provides the following example:

> If a janitor walks five blocks to spend two hours working at a church in the evening, it would be difficult to conclude that the journey is a significant part of the total service. But if a janitor makes a longer journey merely to spend one instant turning on the lights, it is easier to say that the essence of the service was the making of the journey.

*Id.* Furthermore, the "onerousness" of the journey depends not only on its length but also on the circumstances under which it is made, *i.e.,* the time of day, whether it is a regular workday, or the conditions of travel. *See id.* For example, in *Reisinger–Siehler Co. v. Perry, supra,* 165 Md. 191, 167 A. 51 (1933), the special errand at issue occurred at midnight.

 Third, the "suddenness" of the call to work or whether it was made under an "element of urgency" are also relevant factors. Larson & Larson, *supra,* § 16.13 at 4–208.26, § 16.15 at 4–208.39. *See Fairchild Space Co. v. Baroffio, supra,* 77 Md.App. at 501, 551 A.2d 135. When an employee must drop everything and travel to the workplace, this indicates that the travel itself could be part of the service rendered. *See* Larson at 4–208.26 to 4–208.27. In *Reisinger–Siehler,* for example, the employee rushed to a store at which he was employed after hearing a report of a possible break-in. In *Director of Finance v. Alford, supra,* 270 Md. 355, 311 A.2d 412 (1973), the Court cited the emergency situation as a factor in holding that a police officer was on a special mission when

he was injured while travelling early to work because of a special alert. *Id.* at 364, 311 A.2d 412.

 Nevertheless, the suddenness of the call and the urgency of the trip are not dispositive. *See* Larson & Larson, *supra*, § 16.13 at 4–208.26 to 4–208.27. Rather, they are simply factors to consider in the overall analysis of "whether the journey was itself a substantial part of the service for which the claimant was employed and compensated." *Id.* at 4–208.24, 4–208.26 to 4–208.27.

 Appellees argue that Barnes's journey to the Hospital was insufficiently "special." They assert, first, that the trip was not special because Barnes was ultimately responsible for the accounts receivable report. Thus, they claim that production of the report was a "normal supervisory function" and a part of appellant's duties. Second, appellees argue that Barnes was not on a special mission because the accounts receivable report was generated routinely at the same time each month. This routine, in appellees' view, means that the journey to the Hospital was not special. Appellees also claim that Barnes was not on a special mission because her summons to work was not due to an "emergency" or unusual condition, because the accounts receivable report was always generated on the third day of each month. In support of their contention, they cite *Director of Finance v. Alford, supra,* 270 Md. 355, 311 A.2d 412 (1973), and *Mayor and City Council of Baltimore v. Jakelski, supra,* 45 Md.App. 7, 410 A.2d 1116 (1980). Appellees do not argue, however, that Barnes's trip was not a special mission because of any alleged regularity of off-hour trips to the Hospital.

When we apply the test of unusualness and onerousness to the facts of this case, it is apparent that Barnes's trip to the Hospital constituted a special mission. The journey occurred on a Saturday, which was not a normally scheduled work day for appellant. Nor was there evidence that Barnes regularly made weekend trips to the Hospital. Although there was testimony that it was not unusual for Barnes to be contacted during her off-hours, Barnes made clear that she was usually

able to resolve any problems over the telephone.[1] Moreover, the trial judge found her testimony "very credible." The employer, in contrast, did not show the frequency with which Barnes made weekend trips to the Hospital or the circumstances under which such trips were made.[2] In Professor Larson's words, Barnes's trip to work was not "relatively regular" in the context of her work duties. *Cf. Jakelski, supra*, 45 Md.App. at 8, 410 A.2d 1116 (police officer travelled to traffic court "once each month"). Rather, appellant's trip was irregular or unusual in the context of her duties.

In addition, it is salient that Barnes would not have made the trip unless she had received the request from Gill, the Hospital comptroller. The journey was clearly in furtherance of the Hospital's business interests, as appellant was asked to perform the task only because the person normally charged with the duty was on vacation. The trip was also sufficiently onerous, as it required Barnes to report to the office on a day on which she did not expect to work. Indeed, she was engaged in a personal matter at the time she was paged.

With respect to the routine nature of the report, it is undisputed that the report was regularly prepared on a certain day each month. But the fact that Barnes was called on a Saturday and instructed to report to the Hospital indicates that the task was one that the Hospital then needed; it *was* obviously urgent to the Hospital to procure appellant's help,

---

1. The following exchange occurred during Barnes's cross-examination:
 [APPELLEES' COUNSEL]: So it was not unusual for you to be beeped after business hours to come in to take care of a problem or concern, or to even run a report; is that right?
 MS. BARNES: Most of my support after hours was given over the phone, but that was why I was going in, yes.
 On redirect examination, Barnes affirmatively answered her counsel's question as to whether she had testified that it was not unusual for her to be "beeped to come into work." She stated that it was not unusual. But Barnes had already made clear that most of her after-hours support was provided over the telephone.

2. In fact, at oral argument, appellees asserted that Barnes "occasionally" came to the Hospital during her off-hours. They state in their brief only that there were "prior occasions" when she made such off-hours trips.

because the employee who usually did the work was not available.

In any event, an emergency is not always needed for there to be a special mission. In *Alford, supra*, the presence of an emergency was *a factor that the Court considered* in its analysis. 270 Md. at 364, 311 A.2d 412. As we have stated, " '[t]he element of urgency may supply the necessary factor converting a trip into a special mission.' " *Fairchild Space Co., supra*, 77 Md.App. at 501, 551 A.2d 135, quoting Larson, *supra*, § 16.15 at 4–161 (1985). But nothing in *Alford* indicates that the absence of an emergency automatically means that the claimant is not on a special mission.

*Jakelski* does not support appellees' position. In that case, as we noted, we held that a police officer was not on a special mission while travelling from his home to a monthly appearance in traffic court. Our focus was on the fact that the trip was regular and repetitive in the course of the officer's duties. 45 Md.App. at 11, 410 A.2d 1116. We added, however, that, "if the court appearance had been an isolated obligation, the journey to testify might well have been a special errand or mission." *Id.* at 13, 410 A.2d 1116. The critical issue, therefore, was not the urgent nature of the trip, but its repetitiveness and regularity. *Compare Abshire v. City of Rockland*, 388 A.2d 512 (Me.1978) (holding that a police officer's trip to testify in court was, under the circumstances of the case, a special mission).

Appellees also focus on the contention that the *task* that Barnes was expected to perform at the Hospital was regular. Appellees argue that preparing the report was a routine part of Barnes's duties as a supervisor. Even though Barnes was a supervisor, there is no indication in the record that she was the one who regularly performed *the actual task* that had to be done on the day of her injury.

Moreover, appellees' focus on the nature of task rests on a misunderstanding of the special mission rule. The special mission rule contemplates situations in which either the *journey* or the *mission* is special, not simply where the

task to be performed at the workplace is special. *See* Gilbert & Humphreys, MARYLAND WORKERS' COMPENSATION LAW HAND-BOOK, *supra*, § 6.7–2 at 113 (rule covers cases in which "the employment requires that the worker undertake a special *journey*" for the employer [emphasis supplied]). The overall inquiry is whether "the trouble and time of making the journey, or the special inconvenience, hazard, or urgency of making it in the particular circumstances, is itself sufficiently substantial to be viewed as an integral part of the service itself." Larson & Larson, *supra*, § 16.10 at 4–204. When the employee makes a special journey to the place of employment at the request of the employer, the employee is acting in the course of his employment, even if the tasks that he expects to do are completely normal or regular in the context of his ordinary duties.

We find the case of *Bengston v. Greening*, 230 Minn. 139, 41 N.W.2d 185 (1950), instructive. There, the claimant was a bookkeeper for a plumbing shop. She worked almost exclusively on weekdays and had come into the office on a Saturday on only one previous occasion. One Friday afternoon, the employer asked the claimant to report to the office the following morning to obtain records for the accountant, who was preparing the company's tax return. The next day, after performing the assigned task, the claimant was injured on the way home. As in Barnes's case, the claimant was called to the office on a day on which she did not normally work, to perform a task for the employer, and she would not have come to the office if her employer had not requested her to do so. The journey was thus sufficiently irregular, unusual, and onerous to constitute a special mission, even though the claimant's assistance with the preparation of corporate tax returns was arguably within the scope of her duties as a bookkeeper and the need to prepare the tax returns was predictable.

Numerous cases in other jurisdictions have awarded compensation on the basis of the special nature of the journey at issue rather than the special nature of the task performed at the workplace. This analysis is consistent with the purpose and conceptual underpinnings of the special mission rule.

Appellees are thus incorrect in their exclusive focus on the *task* that Barnes intended to perform at the Hospital.

In *Jonas v. Lillyblad*, 272 Minn. 299, 137 N.W.2d 370 (1965), for example, the claimant was responsible for taking care of a hotel's furnace and maintaining proper heat in the building. Although the claimant's normal hours were 7:00 a.m. to 6:00 p.m., one "chilly" night he went to the hotel to turn on the furnace and later returned a second time to turn it off. On the way home, he was struck by a car. *Id.,* 137 N.W.2d at 371. Compensation was awarded under the special mission rule, in spite of the fact that the task that claimant performed at the hotel was obviously within his ordinary duties, and he had previously made ten or eleven similar trips.

In *Kyle v. Greene High School*, 208 Iowa 1037, 226 N.W. 71 (1929), the decedent was a high school janitor. One evening, while at home, he received a call from the principal asking him to come to the school to fix the lights for a basketball game. *Id.* 226 N.W. at 71. Compensation was awarded when, on the way to the school, he was struck by a car and killed. *Id.* at 71–72. Although the task that the decedent was asked to do was consistent with his normal janitorial duties, the journey itself was sufficiently special. As Professor Larson states in his description of the case, "the essence of the service performed in the special journey was the making of the trip itself at a time when the janitor usually remained at home." Larson & Larson, *supra,* § 16.11 at 4–208.18.

Other decisions have applied the special mission rule in the case of a doctor who was injured while making a rare weekend trip to discuss with a patient an operation that was scheduled on the following day, *Johnson v. Fairbanks Clinic*, 647 P.2d 592 (Alaska 1982), a nurse who was called at the conclusion of a scheduled eight-hour shift to a special nursing assignment at a patient's home, *Eady v. Medical Personnel Pool*, 377 So.2d 693 (Fla.1979), and a "line foreman" for a telephone company who was called at home on his day off to check on a broken

telephone pole and supervise its replacement, *Hughes v. New York Telephone Co.*, 99 A.D.2d 908, 472 N.Y.S.2d 513 (1984). All of these cases awarded compensation even though the claimants were called to perform tasks within the scope of their ordinary duties. In fact, in *Johnson v. Fairbanks Clinic, supra,* it was the doctor's normal practice to meet with a patient on the day before an operation.

Still other cases have awarded compensation when the employee was injured while travelling to work *on a regularly scheduled work day*, but the conditions of travel were so difficult as to make the journey an essential part of the employee's service. In *Junium v. A.L. Bazzini Co.*, 86 A.D.2d 690, 446 N.Y.S.2d 520 (1982), for example, the decedent suffered a fatal heart attack while shoveling snow to get his car out of his driveway on a regular work day, in order to travel to an I.R.S. audit that he had been directed to attend. A blizzard had severely affected travel conditions, and the decedent would have stayed home but for the audit. *Id.*, 446 N.Y.S.2d at 521. Similarly, in *Walsh v. Industrial Commission*, 34 Colo.App. 371, 527 P.2d 1180 (1974), the claimant's car became stuck in a snowstorm as she was travelling to work. She walked home and called her employer, telling her supervisor that she could not come to work. When the supervisor told her to come to work "by any means available," *Id.*, 527 P.2d at 1181, the claimant left her house and, on the way to her car, fell on the ice. Compensation was awarded in both of these cases because, but for the express directions to travel, the claimants would have stayed home. The travel—albeit on a regular work day—was under such difficult conditions that the journey was deemed a substantial part of the service itself.

In the present case, although Barnes testified that it was not unusual for her to be paged after her regular work hours, she also stated that it was unusual for her actually to report to the office. In our view, it is manifest that, if Barnes had journeyed directly from shopping to the Hospital on October 3, 1992, she would have been on a special mission. We must

next consider whether her detours, actual and intended, alter that analysis.

## II.

### A.

 It is undisputed that, at the time of her injury, appellant had stopped for gasoline and that she intended to drive to her daughter's house before proceeding to the Hospital. Appellees contend that, even if the trip to the Hospital would otherwise have qualified as a special mission, Barnes had not yet started her trip to the Hospital at the time of her injury, and thus was not on a special mission. *Cf. Charak v. Leddy,* 23 A.D.2d 437, 261 N.Y.S.2d 486 (1965) (employee fell on the steps leading from the inner lobby to the outer lobby of her apartment while leaving on a special mission; *held,* not compensable because employee had not yet started her employment). We conclude, nevertheless, that the status of the journey remains a special mission.

In *Coats & Clark Sales Corp. v. Stewart, supra,* 39 Md.App. 10, 383 A.2d 67 (1978), we held that it was not a material issue of fact on a summary judgment proceeding that an employee was killed in an automobile accident while driving to a grocery store to purchase food for a baby sitter who had been hired so that the employer could attend a company event. The parties had conceded that the trip to the party was a special mission. We determined that the trip to purchase food for the baby sitter was also a special mission, even if the decedent had intended to return to his home prior to travelling to the party. We reasoned that "the presence of the baby sitter was an integral component of the [decedent's] attendance at the party." *Id.,* 39 Md.App. at 17, 383 A.2d 67. Judge Davidson, writing for the Court, said:

> In our view, the task of obtaining food for a baby sitter is *a reasonable and necessary incident* to obtaining a baby sitter's services. *Because that task would not have been undertaken except for the obligation of employment,* it, like the task of transporting the baby sitter, is an integral

component of an employee's attendance at a work-related social event.

*Id.* (Emphasis supplied).

Appellees refer to our statement in *Coats & Clark* that the decedent's purchase of food for the baby sitter was "necessary" to obtaining the baby sitter's services. Pointing out that Barnes's daughter and granddaughter ultimately accompanied her to the Hospital, appellees contend that the journey to their house was not "necessary" to the performance of her service to her employer. In our view, "necessary" does not mean strictly necessary. Stewart's trip to the grocery store in *Coats & Clark* may not have been strictly necessary to obtaining the baby sitter's services. What matters is whether appellant's journey to her daughter's house may be seen as an integral part of her trip to the office. In seeking to take her family home so that she could work, Barnes did exactly what any reasonable person would have done in such a situation.

We conclude from the foregoing that Barnes's trip to her daughter's home would be deemed to be part of the special mission if it is work-related and "integral" to the performance of her service to the Hospital. Factors to be considered in this inquiry include whether the trip to her daughter's house was "a reasonable and necessary incident" of the trip to her office, and whether the trip would have been undertaken in the absence of the obligation of her employment. *See also Green v. Workers' Compensation Appeals Board,* 187 Cal. App.3d 1419, 232 Cal.Rptr. 465 (1986) (employee injured while travelling home to change into clothes that he needed to wear for a trade show; *held,* compensable under special mission rule).

Applying these considerations, we have little difficulty in determining that appellant's intended journey to her daughter's house was part of the special mission. When she was called to the office, Barnes immediately dropped her personal plans and started to drive her family to their home so that she could attend to her business obligations. But for the request to report to work, she would not have attempted to take her

family home at that time. The intended journey was, therefore, reasonably related to her business interests. Appellees cannot seriously argue that Barnes should be expected to take her daughter and granddaughter to her office while she worked. That Barnes's family decided to stay with her after the fall does not transform the character of appellant's intended trip to her daughter's home. Accordingly, we hold that appellant was engaged in a special mission for her employer when she proceeded to take her daughter and granddaughter home after receiving the call to report to work from the Hospital comptroller.

## B.

 Even if Barnes's journey toward her daughter's house were a purely personal journey, when she was at the service station she was on a deviation from that route that served a business purpose. Barnes entered the service station in order to purchase fuel that she needed for her later business trip to the Hospital.

According to the undisputed testimony, which the court found credible, appellant entered the gasoline station because she noticed that she did not have enough fuel to drive to the Hospital. She also testified that she did not need gasoline to complete the shopping excursion with her family, and she had not planned to purchase gasoline prior to being paged.[3] According to appellant, her son usually filled her car with gasoline for the work week every Sunday.[4] Thus, if she had not been told to report to the Hospital, she would not have turned into the service station that contained the fateful puddle of oil.

---

3. [APPELLANT'S COUNSEL]: After picking up your daughter, prior to being paged, had you any intention to get gas?
MS. BARNES: No.
[APPELLANT'S COUNSEL]: Did you perceive at that time you needed gasoline to complete your shopping errand.
MS. BARNES: No. I didn't.

4. [APPELLANT'S COUNSEL]: Who usually puts gas in the car?
MS. BARNES: My son usually do [sic] that on Sunday. . . .

 If an employee who is travelling on a personal journey deviates from the trip to pursue a business journey, the employee is deemed to be acting in the course of employment throughout the course of the detour. *See Avila v. Pleasuretime Soda, Inc.,* 90 N.M. 707, 568 P.2d 233 (App.1977) (employee deviated each night from journey home to deposit the day's receipts in a bank); *N.H. Stone Co. v. Harris,* 531 S.W.2d 513 (Ky.1975) (employee deviated from route to work to pick up employer's truck at the request of a foreman); Larson & Larson, *supra,* § 19.36. *See also Employers Casualty Co. v. Hutchinson,* 814 S.W.2d 539 (Tex.Ct.App.1991) (while on vacation, debt collector paid call on debtor and was killed in automobile accident while returning from deviation; award of compensation affirmed); *Strauss v. Industrial Commission,* 73 Ariz. 285, 240 P.2d 550 (1952); *Larson & Larson, supra,* § 19.00 at 4–339. Accordingly, we conclude that, when Barnes was injured, she was serving a business purpose. Thus, her injury, which occurred during this business deviation, arose out of and in the course of her employment.

## CONCLUSION

All the evidence in the record points inescapably to the conclusion that appellant was engaged in a special mission for her employer at the time of her injury. Therefore, we hold that the circuit court erred in concluding that appellant had not sustained an accidental injury arising out of and in the course of her employment. Because the Workers' Compensation Commission had previously reached the same conclusion, it did not resolve the issues of the extent of appellant's disability and the amount of compensation to which she is entitled. These and other questions will be for the Commission to resolve on remand.

**JUDGMENT REVERSED. CASE REMANDED TO CIRCUIT COURT FOR BALTIMORE CITY WITH INSTRUCTIONS TO REMAND CASE TO THE WORKERS' COMPENSATION COMMISSION FOR FURTHER PROCEEDINGS CONSISTENT WITH THIS OPINION.**

**COSTS TO BE PAID BY APPELLEES.**